**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AMARTE USA HOLDINGS, INC., a
Delaware Corporation,

        Plaintiff,

        v.

BERGDORF GOODMAN LLC, a Delaware
Limited Liability Company, T.J. MAXX,
Inc., a Massachusetts Corporation,
MARSHALLS OF MA, INC., a
Massachusetts Corporation, YNAP
CORPORATION, a Delaware Corporation,
PENNEY OPCO LLC, a Virginia Limited
Liability Company, PERSONALIZED
BEAUTY DISCOVERY, INC., a Delaware
Corporation, EAU DE LUXE, LTD., a New
York Corporation, and VOXPOP, INC., a
Delaware Corporation

        Defendants.

Case No.: 1:24-cv-883

**COMPLAINT**

<u>PLAINTIFF DEMANDS
A TRIAL BY JURY</u>

---

Plaintiff Amarte USA Holdings, Inc. ("**Amarte**") brings this complaint against Defendants Bergdorf Goodman LLC ("**Bergdorf**"), T.J. Maxx, Inc. ("**TJM**"), Marshalls of MA, Inc. ("**Marshalls**"), YNAP Corporation ("**YNAP**"), PENNEY OpCo LLC ("**JCP**"), Personalized Beauty Discovery, Inc. ("**PBD**"), Eau De Luxe, Ltd. ("**EDL**"), and Voxpop, Inc. ("**Voxpop**") for injunctive relief and damages under the laws of the United States and the State of New York.

## <u>NATURE OF THE ACTION</u>

1.     This is an action for violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a), violation of the New York statutory law for unfair competition, N.Y. Gen. Bus. Law § 349, *et seq.*, New York common law for trademark infringement, and New York common law for passing off, unjust enrichment, and unfair competition.

## <u>THE PARTIES</u>

2.     Amarte is a Delaware corporation with its headquarters in Redding, California.

3.      Bergdorf is a Delaware limited liability company and conducts business in and around Manhattan, New York with a principal place of business within this district at 625 Madison Avenue, 14th Floor, New York, New York 10022. Bergdorf has at least two retail store locations in the Southern District of New York.

4.      TJM is a Massachusetts corporation with corporate offices and retail store locations in New York. TJM operates at least twenty-five retail stores in New York with at least ten retail stores in the Southern District of New York.

5.      Marshalls is a Massachusetts corporation with corporate offices and retail store locations in New York. Marshalls operates at least twenty retail stores in New York with at least five retail stores in the Southern District of New York.

6.      YNAP is a Delaware corporation and conducts business in and around New York, with a principal place of business within this district at 111 West 33 Street, New York, NY 10120.

7.      JCP is a Virginia limited liability company with corporate offices and retail store locations in New York. JCP operates at least thirteen retail stores in New York with at least one retail store in the Southern District of New York.

8.      PBD is a Delaware corporation, doing business as IPSY and BoxyCharm, and conducts business in and around New York, with a principal place of business at 450 Park Ave S, New York, NY 10016.

9.      EDL is a New York corporation and conducts business in and around New York, with a principal place of business at 37-24, 24 Street, Suite 114, Long Island City, NY 11101.

10.     Voxpop is a Delaware corporation doing business as Influenster and conducts business in and around New York, with a principal place of business at 435 Hudson St. #400 New York, NY 10014.

11.     Defendants Bergdorf, TJM, Marshalls, YNAP, JCP, PBD, EDL, and Voxpop are

hereinafter collectively referred to as "**Defendants**."

12.     The actions alleged herein have been undertaken by each Defendant individually and collectively, were actions that each Defendant caused to occur, authorized, controlled, directed, or had the ability to authorize, control, or direct, and/or were actions in which each Defendant assisted, participated, or otherwise encouraged, and are actions for which each Defendant is liable, jointly and severally.

<u>**JURISDICTION AND VENUE**</u>

13.     This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.*, particularly under 15 U.S.C. §§ 1114 and 1125, as well as state unfair competition law and the common law of trademark infringement, passing off, unjust enrichment, and unfair competition. This Court has jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §§ 1116, 1121, and 1125. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §§ 1367(a) and 1338(b), those claims being joined with a substantial and related claim under the trademark laws of the United States are closely related to the federal claims such that they form part of the same case or controversy and derive from a common nucleus of operative facts.

14.     This Court has personal jurisdiction over Defendants because Defendants have directed tortious acts at Amarte in this judicial district and have committed tortious acts that they knew or should have known would cause injury to Amarte in this judicial district. Defendants have advertised, marketed, distributed, and sold goods in the State of New York, and in this judicial district, that bear the infringing trademark at issue in this case. Further, as detailed below, Defendants have advertised, marketed, distributed, and sold goods through their interactive commercial websites that are accessible from and directed to consumers from this judicial district and these goods have been accessed and purchased by consumers residing or located in this

judicial district.

15.    This Court has personal jurisdiction over Defendants because each of the Defendants conduct continuous and systematic business in New York and in this judicial district, has offices, retail store locations, and/or a principal place of business in New York and in this judicial district, and/or operate commercial and interactive websites all purposefully directed and expressly aimed at New York residents, derived commercial benefits from advertisement, marketing, distribution, and sale of the infringing goods in New York and this judicial district, and knowingly cause the injuries set forth herein to Amarte in New York and in this judicial district.

16.    This Court has personal jurisdiction over Bergdorf because Bergdorf has a principal place of business within this district and purposefully directed and expressly aimed its tortious activities at the state of New York and this judicial district and established sufficient minimum contacts by advertising, marketing, distributing, and selling infringing goods bearing the infringing trademark at issue to residents in New York and this judicial district as a regular course of business through its retail locations and commercial and interactive website, and causing the infringing goods to be delivered to residents in New York and this judicial district, all knowing such actions would cause harm to Amarte and all of which have caused injury to Amarte within New York and this judicial district.

17.    This Court has personal jurisdiction over TJM because TJM purposefully directed and expressly aimed its tortious activities at the state of New York and this judicial district and established sufficient minimum contacts by advertising, marketing, distributing, and selling infringing goods bearing the infringing trademark at issue to residents in New York and this judicial district as a regular course of business through its retail locations and commercial and interactive website, and causing the infringing goods to be delivered to residents in New York

and this judicial district, all knowing such actions would cause harm to Amarte and all of which have caused injury to Amarte within New York and this judicial district.

18. This Court has personal jurisdiction over Marshalls because Marshalls purposefully directed and expressly aimed its tortious activities at the state of New York and this judicial district and established sufficient minimum contacts by advertising, marketing, distributing, and selling infringing goods bearing the infringing trademark at issue to residents in New York and this judicial district as a regular course of business through its retail locations and commercial and interactive website, and causing the infringing goods to be delivered to residents in New York and this judicial district, all knowing such actions would cause harm to Amarte and all of which have caused injury to Amarte within New York and this judicial district.

19. This Court has personal jurisdiction over YNAP because YNAP has a principal place of business within this district and purposefully directed and expressly aimed its tortious activities at the state of New York and this judicial district and established sufficient minimum contacts by advertising, marketing, distributing, and selling infringing goods bearing the infringing trademark at issue to residents in New York and this judicial district as a regular course of business through its commercial and interactive website, and causing the infringing goods to be delivered to residents in New York and this judicial district, all knowing such actions would cause harm to Amarte and all of which have caused injury to Amarte within New York and this judicial district.

20. This Court has personal jurisdiction over JCP because JCP purposefully directed and expressly aimed its tortious activities at the state of New York and this judicial district and established sufficient minimum contacts by advertising, marketing, distributing, and selling infringing goods bearing the infringing trademark at issue to residents in New York and this judicial district as a regular course of business through its retail locations and commercial and

interactive website, and causing the infringing goods to be delivered to residents in New York and this judicial district, all knowing such actions would cause harm to Amarte and all of which have caused injury to Amarte within New York and this judicial district.

21.     This Court has personal jurisdiction over PBD because PBD has a principal place of business within this district and purposefully directed and expressly aimed its tortious activities at the state of New York and this judicial district and established sufficient minimum contacts by advertising, marketing, distributing, and selling infringing goods bearing the infringing trademark at issue to residents in New York and this judicial district as a regular course of business through its commercial and interactive website, and causing the infringing goods to be delivered to residents in New York and this judicial district, all knowing such actions would cause harm to Amarte and all of which have caused injury to Amarte within New York and this judicial district.

22.     This Court has personal jurisdiction over EDL because EDL has a principal place of business within this district and purposefully directed and expressly aimed its tortious activities at the state of New York and this judicial district and established sufficient minimum contacts by advertising, marketing, distributing, and selling infringing goods bearing the infringing trademark at issue to residents in New York and this judicial district as a regular course of business through its commercial and interactive website, and causing the infringing goods to be delivered to residents in New York and this judicial district, all knowing such actions would cause harm to Amarte and all of which have caused injury to Amarte within New York and this judicial district.

23.     This Court has personal jurisdiction over Voxpop because Voxpop has a principal place of business within this district and purposefully directed and expressly aimed its tortious activities at the state of New York and this judicial district and established sufficient minimum contacts by advertising, marketing, distributing, and selling infringing goods bearing the infringing trademark at issue to residents in New York and this judicial district as a regular course

of business through its commercial and interactive website, and causing the infringing goods to be delivered to residents in New York and this judicial district, all knowing such actions would cause harm to Amarte and all of which have caused injury to Amarte within New York and this judicial district.

24.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims occurred in this judicial district and Defendants are otherwise subject to the Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### Amarte's Trademark Rights

25.    For more than ten years, Amarte has manufactured, advertised, marketed, promoted, distributed, sold, and otherwise offered high end cosmetics products bearing its EYECONIC® trademark ("**Amarte's EYECONIC Mark**"). Amarte is the owner of valuable trademark rights in the aforementioned cosmetics products, namely, an anti-wrinkle topical cream for nourishing, hydrating, rejuvenating, and improving the appearance of skin around the eyes. ("**Amarte's Goods**").

26.    Amarte is an industry leader in providing consumers with the most effective, high-quality cosmetics formulations and its goods are recognized and sold throughout the United States and the world.

27.    For over a decade, Amarte has substantially exclusively and continuously used and promoted Amarte's EYECONIC Mark in connection with Amarte's Goods, including on its website www.amarteskincare.com, which has resulted in strong consumer recognition. In fact, Amarte's skin cream bearing Amarte's EYECONIC Mark is one of the company's bestselling products.

28.     As a result of Amarte's substantially exclusive and continuous use and promotion of its EYECONIC Mark, Amarte owns extremely valuable goodwill in Amarte's EYECONIC Mark. The purchasing public has therefore come to associate Amarte's EYECONIC Mark with Amarte.

29.     In addition to Amarte's common law rights in its EYECONIC Mark, Amarte owns the following incontestable registration on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark Information | Goods |
|---|---|
| EYECONIC<br>Filing Date: July 30, 2010<br>Reg. Date: April 30, 2013<br>Reg. No.: 4328655 | Class 03: Eye cosmetics; eye creams |

Defendants' Business and Infringing Acts

30.     Defendants have advertised, marketed, promoted, sold, and/or have offered for sale a cosmetic product bearing the identical or substantially similar EYE-CONIC trademark ("**Infringing Mark**").

31.     Defendants have used the Infringing Mark in connection with advertising, marketing, promoting, selling, and/or offering for sale a cosmetic eye shadow palette ("**Infringing Goods**")

32.     Defendants have used the Infringing Mark in connection with the Infringing Goods, including   on the www.bergdorfgoodman.com ("Bergdorf Website"), tjmaxx.tjx.com ("TJM  Website"), www.marshalls.com ("Marshalls  Website"), www.net-a-porter.com  and www.yoox.com/us ("YNAP Websites"), www.jcpenney.com ("JCP Website"), www.ipsy.com, www.ipsycorporate.com, and boxycharm.ipsy.com,  ("PBD Websites"), www.eaudeluxe.com

("EDL Website"), and www.influenster.com ("Voxpop Website") websites (collectively, the "Websites"), and elsewhere, including, but not limited to retail stores located in New York and this judicial district.

33.     Defendant Bergdorf has advertised, marketed, promoted, sold and/or has offered for sale the Infringing Goods bearing the Infringing Mark on the Bergdorf Website, on its social media platforms, and in its retail stores nationwide, including retail stores in this judicial district.

34.     Specifically, Bergdorf has advertised, marketed, promoted, sold, and/or has offered for sale the Infringing Goods on its website and in its retail stores located in this judicial district, as evidenced by a subpage on the Bergdorf Website and a Facebook post by Marc Jacobs Beauty that informs consumers where the Infringing Goods may be purchased ("MJB Facebook Post"):

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Screenshot of the Bergdorf Website
([https://www.bergdorfgoodman.com/p/marc-jacobs-eye-conic-longwear-eyeshadow-palette-and-matching-items-prod136790006](https://www.bergdorfgoodman.com/p/marc-jacobs-eye-conic-longwear-eyeshadow-palette-and-matching-items-prod136790006))





MJB Facebook Post
(https://www.facebook.com/MarcJacobsBeauty/photos/a.675657349131249/1630342226996085/?type=3)



35.     Defendants TJM and Marshalls have advertised, marketed, promoted, sold and/or have offered for sale the Infringing Goods bearing the Infringing Mark on the TJM Website and Marshalls Website, on their respective social media platforms, and in the respective retail stores nationwide, including retail stores in this judicial district.

36.     Specifically, TJM and Marshalls have advertised, marketed, promoted, sold, and/or have offered for sale the Infringing Goods on their respective websites and in their respective retail stores located in this judicial district, as evidenced by the MJB Facebook Post, *supra*, and third-party websites and social media handles informing consumers where and how the Infringing goods were purchased:

Instagram post evidencing purchase of Infringing Goods from TJM
(https://www.instagram.com/p/CVjiGGMtCWz/?igshid=MDJmNzVkMjY%3D&epik=dj0yJnU
9ZC1XbE1tbl93c0d3M2o1Q3Qxd25odC1hbGFkY3AtSkkmcD0wJm49bHZfVGhZQ2N0OVZ
PbUtYajRnc1BfZyZ0PUFBQUFBR1duNGZj)



Instagram post evidencing offering of Infringing Goods from TJM and Marshalls
(https://www.instagram.com/p/CVjiGGMtCWz/?igshid=MDJmNzVkMjY%3D&epik=dj0yJnU
9ZC1XbE1tbl93c0d3M2o1Q3Qxd25odC1hbGFkY3AtSkkmcD0wJm49bHZfVGhZQ2N0OVZ
PbUtYajRnc1BfZyZ0PUFBQUFBR1duNGZ)



Instagram post evidencing offering of Infringing Goods from Marshalls
(https://www.instagram.com/p/BrWEMeCh_x2/?img_index=1)



YouTube video evidencing purchase of Infringing Goods from Marshalls
(https://www.youtube.com/watch?app=desktop&v=KoO9bB6x23s)



Reddit post evidencing purchase of Infringing Goods from TJM
([https://www.reddit.com/r/MakeupAddiction/comments/qfusol/just_picked_up_this_mj_palette_at_tj_maxx_anyone/](https://www.reddit.com/r/MakeupAddiction/comments/qfusol/just_picked_up_this_mj_palette_at_tj_maxx_anyone/))





37.     YNAP has advertised, marketed, promoted, sold and/or has offered for sale the Infringing Goods bearing the Infringing Mark on the YNAP Websites, on its social media platforms, and in its retail stores nationwide, including retail stores in this judicial district.

38.     Specifically, YNAP has advertised, marketed, promoted, sold and/or has offered for sale the Infringing Goods on its website and/or in its retail locations in this judicial district, as evidenced by a subpage on the YNAP Websites and the MJB Facebook Post, *supra*:

Screenshots of the YNAP Websites
([https://www.net-a-porter.com/en-us/shop/product/marc-jacobs-beauty/beauty/eyeshadow/eye-conic-longwear-eyeshadow-palette-scandalust-740/665933304004337](https://www.net-a-porter.com/en-us/shop/product/marc-jacobs-beauty/beauty/eyeshadow/eye-conic-longwear-eyeshadow-palette-scandalust-740/665933304004337))



39.     JCP has advertised, marketed, promoted, sold and/or has offered for sale Infringing Goods bearing the Infringing Mark on the JCP Website, on its social media platforms, and in its retail stores nationwide, including retail stores in this judicial district.

40.     Specifically, JCP has advertised, marketed, promoted, sold and/or has offered for sale the Infringing Goods on its website and in its retail stores located in this judicial district, as evidenced by the MJB Facebook Post, *supra*.

41.    PBD has advertised, marketed, promoted, sold and/or has offered for sale the Infringing Goods bearing the Infringing Mark on the PBD Websites, on its social media platforms, and in its retail locations nationwide, including retail locations in this judicial district.

42.    Specifically, PBD has advertised, marketed, promoted, sold and/or has offered for sale the Infringing Goods on its website and in its retail stores located in this judicial district, as evidenced by screenshots of the PBD Websites and a third-party video post and description:

Screenshot of the PBD Websites
(https://www.ipsy.com/product/p-AS-MAR-EYSHD01-F08)

/ / /

/ / /

/ / /

Third-party video post and description
(https://www.youtube.com/watch?v=ujLrtjlCzbI)



43.    EDL has advertised, marketed, promoted, sold and/or has offered for sale the Infringing Goods bearing the Infringing Mark on the EDL Website, and on information and belief its social media platforms, in its office in New York, and in this judicial district.

44.    Specifically, EDL has advertised, marketed, promoted, sold and/or has offered for sale the Infringing Goods on its website and in its retail stores located in this judicial district, as evidenced by a screenshot of the EDL Website:

Screenshot of the EDL Website
(https://www.eaudeluxe.com/products/marc-jacobs-eye-conic-eye-shadow-palette-7-x-0-85-g)



45.    As direct competitors of Amarte, Defendants have used the Infringing Mark in connection with the promotion, distribution, marketing, and sale of the Infringing Goods to the same consumers and in overlapping channels of trade in the United States.

46.    Defendants' use of the Infringing Mark commenced several years after Amarte

began use of Amarte's EYECONIC Mark and the USPTO issued its trademark registration. Therefore, Amarte enjoys senior trademark rights that have priority over the Infringing Mark.

47.    Defendants' use of the Infringing Mark is a willful and intentional attempt to trade on the goodwill and commercial success that Amarte has built up in Amarte's EYECONIC Mark and to free ride on Amarte's success as a preeminent and well-known manufacturer, distributor, advertiser, marketer, and developer of skin care and cosmetic products.

48.    Defendants' identical or substantially similar use of the Infringing Mark in connection with the sale of identical or confusingly similar cosmetic eye products is likely to cause confusion before, during, and after the time of purchase because consumers, prospective consumers, and others viewing Defendants' Infringing Goods at the point of sale or any point in the stream of commerce are likely to confuse Amarte's EYECONIC Mark and the infringing EYE-CONIC mark with respect to source, association, affiliation, and sponsorship.

49.    Such similarity in Amarte's EYECONIC Mark and the Infringing Mark can be seen in the following side-by-side comparison of the products:

Amarte's EYECONIC Product                  The Infringing Goods




50.    By causing a likelihood of confusion, mistake, and deception, Defendants are inflicting irreparable harm on the goodwill symbolized by Amarte's EYECONIC Mark and the reputation for quality that it embodies.

51.    On information and belief and based on the business acumen and sophistication of each of the Defendants, Defendants were aware of Amarte's EYECONIC Mark, but nevertheless willfully and intentionally adopted and used the Infringing Mark.

52.    Thus, Defendants knowingly, willfully, intentionally, and maliciously adopted and used the identical or substantially similar imitation of Amarte's EYECONIC Mark.

<u>Defendants' Contacts Within This Judicial District</u>

53.    Defendants' contacts within this judicial district are numerous and substantial where all Defendants have corporate offices, multiple retail locations, and/or a principal place of business within this judicial district.

54.    Defendants individually and collectively target consumers throughout the United States, including consumers in this judicial district. Defendants have individually and collectively operated their Websites where consumers can access, view, select, read about, purchase, and ship Infringing Goods bearing the Infringing Mark throughout the United States, including to consumers in this judicial district.

55.    Defendants have individually and collectively advertised, marketed, promoted, sold, and/or have offered for sale the Infringing Goods bearing the Infringing Mark to consumers throughout the United States, including to consumers in this judicial district.

56.    Consumers in this judicial district have purchased, owned, and/or used the Infringing Goods bearing the Infringing Mark directly through the Defendants' offering of the Infringing Goods.

57.    Defendants' Websites are not passive but are interactive websites that allow users nationwide and within this judicial district to purchase the Infringing Goods bearing the Infringing Mark. *See, e.g.*, ¶¶ 24, 29–40, *supra*.

### FIRST CAUSE OF ACTION
### (Federal Trademark Infringement – 15 U.S.C. § 1114(1))

58.     Amarte repeats, realleges, and incorporates all Paragraphs above as though fully set forth in this cause of action.

59.     Amarte owns the incontestable USPTO Registration No. 4,328,655 in Class 3. A true and correct copy of this registration is attached as Exhibit A ("**EYECONIC Registration**").

60.     Prior to any use of the Infringing Mark in commerce by the Defendants, Amarte's EYECONIC Mark was registered with the USPTO, incontestable, and in use by Amarte.

61.     Defendants' use in commerce of the Infringing Mark in connection with Defendants' Infringing Goods constitutes trademark infringement of Amarte's rights in its EYECONIC Registration pursuant to 15 U.S.C. § 1114(1).

62.     The Infringing Mark is identical or substantially similar to Amarte's EYECONIC Mark. Defendants' Infringing Goods are substantially similar, and/or highly related to the goods set forth in Amarte's EYECONIC Registration.

63.     Defendants' use in commerce of the Infringing Mark in connection with their Infringing Goods is likely to cause confusion or mistake, or to deceive consumers of Defendants' Infringing Goods and Amarte's Goods to erroneously believe that Defendants' Infringing Goods originate from the same source as Amarte's Goods, or are otherwise affiliated, connected, or associated with Amarte, or sponsored or approved by Amarte, when in fact they are not.

64.     On information and belief, Defendants have knowingly, willfully, and intentionally infringed Amarte's trademark rights by deliberately exploiting the substantial goodwill associated with Amarte's EYECONIC Registration.

65.     On information and belief, Defendants used the Infringing Mark with the willful intent to cause consumer confusion and to deceive consumers into believing that Defendants' Infringing Goods are actually Amarte's Goods or are associated therewith.

66.      Amarte has no adequate remedy at law. Defendants' conduct as alleged herein has caused and will continue to cause irreparable harm to Amarte's rights in Amarte's EYECONIC Mark, Amarte's rights in its EYECONIC Registration, and Amarte's business reputation and goodwill, as well as damages in an amount that cannot be accurately computed at this time but will be proven at trial.

## SECOND CAUSE OF ACTION
### (Federal Counterfeiting – 15 U.S.C. §§1114(1) and 1116(d))

67.      Amarte repeats, realleges, and incorporates all Paragraphs above as though fully set forth in this cause of action.

68.      Amarte's EYECONIC Mark is registered on the Principal Register under U.S. Registration No. 4328655 for eye cosmetics; eye creams.

69.      Defendants' have engaged in unlawful counterfeiting practices in violation of 15 U.S.C. §§1114(1) and 1116(d) because Defendants' use of the spurious EYE-CONIC Mark in connection with eye cosmetics products is substantially indistinguishable from Amarte's EYECONIC Mark and is used in connection with the same goods offered in connection with Amarte's EYECONIC Mark.

70.      Defendants have knowingly and intentionally used the spurious EYE-CONIC Mark to designate goods that are not genuine Amarte Goods.  Defendants' use of the spurious EYE-CONIC Mark that is substantially indistinguishable from Amarte's EYECONIC Mark causes confusion, mistake, or deception as to the source of origin of the goods offered by or sold by Defendants in connection with the spurious EYE-CONIC Mark as being the EYECONIC Goods offered and sold by Amarte.

## THIRD CAUSE OF ACTION
### (Federal Unfair Competition – 15 U.S.C. § 1125(a))

71.      Amarte repeats, realleges, and incorporates all Paragraphs above as though fully

set forth in this cause of action.

72.     Amarte owns common law rights in Amarte's EYECONIC Mark in connection with Amarte's Goods. In addition, Amarte's EYECONIC Mark has acquired distinctiveness in connection with Amarte's Goods as an indicator of source prior to Defendants' use of the Infringing Mark in connection with Defendants' Infringing Goods. At all times relevant to this lawsuit, consumers in the cosmetic and skin care industry have associated Amarte's EYECONIC Mark with Amarte and its reputation for creating high-quality skin care and cosmetic products.

73.     Defendants' use in commerce of the Infringing Mark in connection with the Infringing Goods constitutes trademark infringement of Amarte's rights in Amarte's EYECONIC Mark and unfair competition pursuant to 15 U.S.C. § 1125(a).

74.     The Infringing Mark is identical or substantially similar to Amarte's EYECONIC Mark.

75.     Defendants' Infringing Goods are substantially similar, and/or related to Amarte's Goods.

76.     Defendants' use in commerce of the Infringing Mark in connection with Defendants' Infringing Goods is likely to cause confusion or mistake, or to deceive consumers of Defendants' Infringing Goods and Amarte's Goods to erroneously believe that Defendants' Infringing Goods originate from the same source as Amarte's Goods, or are otherwise affiliated, connected, or associated with Amarte, or sponsored or approved by Amarte, when in fact they are not.

77.     On information and belief, Defendants have knowingly, willfully, and intentionally infringed Amarte's trademark rights by deliberately exploiting the substantial goodwill associated with Amarte's EYECONIC Mark.

78.     On information and belief, Defendants used the EYE-CONIC Mark with the willful intent to cause confusion and to deceive consumers into believing that Defendants' Infringing Goods are actually Amarte's Goods or associated therewith.

79.     Amarte has no adequate remedy at law. Defendants' conduct as alleged herein has caused and will continue to cause irreparable harm to Amarte's rights in Amarte's EYECONIC Mark and its EYECONIC registration, and to its business reputation and goodwill, as well as damages in an amount that cannot be accurately computed at this time but will be proven at trial.

**FOURTH CAUSE OF ACTION**
**(New York Statutory Unfair Competition – N.Y. Gen. Bus. Law § 349, *et seq*.)**

80.     Amarte repeats, realleges, and incorporates all Paragraphs above as though fully set forth in this cause of action.

81.     Defendants have acted out of a dishonest purpose and are making unauthorized commercial uses of the EYE-CONIC Mark in a deliberate, willful, intentional, and wrongful attempt to trade on Amarte's goodwill, reputation, and financial investments in Amarte's EYECONIC Mark.

82.     By reason of Defendants' bad faith conduct as alleged herein, Defendants have engaged in unlawful, unfair, and/or fraudulent ongoing business practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*.

83.     As a direct result of Defendants' unfair competition with regard to the Infringing Mark, Defendants have unlawfully acquired, and continue to acquire on an ongoing basis, an unfair competitive advantage and have engaged in, and continue to engage in, wrongful business conduct to Defendants' monetary advantage and to the detriment of Amarte.

84.     On information and belief, Defendants' conduct as alleged herein has been undertaken willfully, intentionally, and maliciously, and with full knowledge and in conscious disregard of Amarte's rights.

85.     Defendants' illegal and unfair business practices are continuing, and injunctive relief and civil penalty pursuant to N.Y. Gen. Bus. Law § 349 *et seq*. is necessary to prevent and restrain further violations by Defendants.

86.     This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

## FIFTH CAUSE OF ACTION
### (New York Common Law Trademark Infringement)

87.     Amarte repeats, realleges, and incorporates all Paragraphs above as though fully set forth in this cause of action.

88.     Amarte's EYECONIC Mark is a valid and subsisting trademark under New York common law.

89.     Amarte's use of Amarte's EYECONIC Mark is senior to Defendants' use of the Infringing Mark.

90.     Defendants' continued and unauthorized use of the Infringing Mark constitutes trademark infringement under New York common law and is likely to cause confusion, deception, and mistake among the consuming public as to the source of, and authorization for, Defendants' Infringing Goods sold and/or advertised by Defendants in violation of the common law of the State of New York.

91.     Irreparable harm to Amarte is imminent as a result of Defendants' conduct, and Amarte is without an adequate remedy at law. Amarte is thus entitled to an injunction restraining Defendants, their officers, directors, agents, employees, representatives, and all other persons acting in concert with them, from engaging in further such infringing acts.

92.     On information and belief, Defendants' conduct as alleged herein has been undertaken knowingly, willfully, and maliciously, and with full knowledge and in conscious disregard of Amarte's rights.

93.     As a result of Defendants' infringement, Amarte has sustained and continues to sustain damages in an amount to be determined at trial, plus interest, costs, and attorneys' fees.

94.     As a result of Defendants' infringement, the public has been harmed.

95.     This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of infringement joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

## SIXTH CAUSE OF ACTION
### (New York Common Law Passing Off, Unfair Competition, and Unjust Enrichment)

96.     Amarte repeats, realleges, and incorporates all Paragraphs above as though fully set forth in this cause of action.

97.     By virtue of Defendants' conduct as alleged herein, Defendants' actions constitute passing off and unfair competition under the common law of the State of New York.

98.     As a direct and proximate result of the foregoing, Defendants have been unjustly enriched at the expense of Amarte.

99.     As well as harming the public, Defendants' conduct as alleged herein has caused and will continue to cause Amarte irreparable harm for which there is no adequate remedy at law and is also causing damage to Amarte in an amount which cannot be accurately computed at this time but will be proven at trial.

100.     Defendants' actions were undertaken intentionally to obtain an unfair advantage over Amarte and in conscious disregard of Amarte's rights, and were malicious, oppressive, and/or fraudulent.

101.     Amarte requests punitive or exemplary damages pursuant to New York Civil Code

§ 3294(a) in an amount sufficient to punish and deter Defendants and to make an example of them.

102.    This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of passing off and unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and under 28 U.S.C. § 1367.

## PRAYER FOR RELIEF

**WHEREFORE**, Amarte prays for judgment as follows:

A.    That the Court enter a finding that Defendants' use of the Infringing Mark in connection with the Infringing Goods infringes Amarte's rights in its EYECONIC Registration and Amarte's EYECONIC Mark;

B.    That the Court enter a finding that Defendants' use of the Infringing Mark in connection with the Infringing Goods constitutes counterfeit infringement of Amarte's rights in its EYECONIC Registration and Amarte's EYECONIC Mark;

C.    That the Court enter a permanent injunction prohibiting Defendants, as well as their officers, directors, predecessors, successors, agents, employees, representatives, and all persons, corporations, or other entities acting in concert or participation with Defendants from:

    i.    Using the Infringing Mark in connection with any of Defendants' products including Defendants' Infringing Goods in New York and throughout the United States;

    ii.    Infringing any of Amarte's intellectual property rights in Amarte's EYECONIC Mark;

    iii.    Infringing any of Amarte's intellectual property rights in its EYECONIC Registration;

iv.   Engaging in any conduct that tends falsely to represent, or is likely to confuse, mislead, or deceive members of the public to believe that the actions of Defendants or any of their officers, directors, predecessors, successors, agents, employees, representatives, and all persons, corporations, or other entities acting in concert or participation with Defendants are sponsored, approved, or licensed by Amarte, or are in any way connected or affiliated with Amarte;

v.   Affixing, applying, annexing, or using in connection with the manufacture, distribution, advertising, sale, and/or offering for sale or other use of any goods or services, a false description or representation, including words or other symbols, tending to falsely describe or represent such goods or services as being those of Amarte, including without limitation Amarte's EYECONIC Mark;

vi.   Otherwise competing unfairly with Amarte in any manner; and

vii.   Effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i)-(vi) above.

D.   That the Court enter a finding that Defendants' actions were willful, intentional, deliberate, and malicious;

E.   That the Court require Defendants to immediately supply Amarte's counsel with a complete list of individuals and entities from whom or which they purchased, and to whom or which they sold, offered for sale, distributed, advertised, or promoted, infringing products as alleged in this Complaint;

F.   That the Court require Defendants to immediately deliver to Amarte's counsel their entire inventory of infringing products, including without limitation, skin care products, cosmetics, packaging, labeling, advertising and promotional material, and all formulas,

formulations, plates, patterns, molds, and other material and information for manufacturing, producing, or printing such items, that are in their possession or subject to their control that infringe Amarte's EYECONIC Mark;

G.     That the Court require Defendants, withing thirty (30) days after service of the judgment demanded herein, to file with this Court and serve upon Amarte's counsel a written report under oath setting forth in detail the manner in which they have complied with the judgment;

H.     That the Court award Amarte damages in accordance with applicable law, including without limitation three times the amount of any and all profits realized by Defendants from the use of the Infringing Mark in accordance with 15 U.S.C. § 1117(a), plus prejudgment interest;

I.     That the Court award Amarte punitive damages in an amount sufficient to punish and deter Defendants;

J.     That the Court find that this is an exceptional case and award Amarte its reasonable attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117(a), (b) and/or (c) and/or New York law;

K.     That the Court order an accounting of and impose a constructive trust on all of Defendants' funds and assets that arise out of their infringing activities;

L.     That the Court retain jurisdiction of this action for the purpose of enabling Amarte to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith, and for the punishment of any violations thereof; and

M.     For such other and further relief as the Court may deem just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38, Amarte hereby demands a trial by jury.

DATED: February 7, 2024

Respectfully submitted,

**LIPPES MATHIAS LLP**

/s/ Scott E. Thompson
Scott E. Thompson, Esq.
260 Madison Avenue, 17th Floor
New York, New York 10016
T: (332) 345-4500
F: (518) 462-5260
E: sthompson@lippes.com

**IPLA, LLP**
John M. Kim, Esq. (*pro hac vice* forthcoming)
Benjamin S. White, Esq. (*pro hac vice* forthcoming)
4445 Eastgate Mall, Suite 200
San Diego, California 92101
T: (858) 272-0220
F: (858) 272-0221
E: jkim@ipla.com
E: bwhite@ipla.com

*Attorneys for Plaintiff Amarte USA Holdings, Inc.*